### In re GANNON.

(District Court, D. Maine. October 24, 1921.)

No. 13665.

**Bankruptcy ⇐318(2)—To recover for bankrupt's refusal to receive goods purchased, goods must have been tendered and resold on rejection.**

On bankruptcy of grain trader, those who had sold him grain could not establish a claim for damages for his refusal to accept the grain, without showing both an actual tender to him, and, on his refusal to accept, a resale to fix the market price, as bearing on damages; a mere bookkeeping entry, by the sellers, of the difference between the market and contract price, not being sufficient to show damages actually sustained.

In Bankruptcy. In the matter of the bankruptcy of Lewis F. Gannon. Proofs of claim of the Maine Grain Company and others were disallowed by the referee, and they petition for review of the orders of disallowance. Orders affirmed.

⇐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Andrews & Nelson, of Augusta, Me., for bankrupt.

Stephen S. Lancaster, of Augusta, Me., for trustees.

Clement F. Robinson, Carroll S. Chaplin, and W. B. Drummond, all of Portland, Me., for creditors.

Arthur Ritchie, of Belfast, Me., for Waldo Trust Co. and City National Bank.

HALE, District Judge. This case comes before the court upon the petition of the Maine Grain Company, the Portland Grain Company, and the Paris Flouring Company, creditors of the bankrupt, for review of orders of the referee in bankruptcy, disallowing parts of their proofs of claim against the bankrupt's estate.

The proof of debt, in each of the first two cases named, alleges that the consideration of the debt was goods sold to the bankrupt at his request, according to the statement attached, acceptance of which was refused, whereupon the creditor was obliged to dispose of the goods in the open market at the prices set forth in the statement, to its damage as set forth.

In the case of the Paris Flouring Company, the allegation is that the consideration was for goods sold and delivered. In other respects, the proof is substantially like the proof in the other cases.

These petitioners had grain contracts with Gannon in the summer of 1920, for the delivery of grain at his place of business at Albion, Me., in carload lots. Under these contracts the seller, in each case, was bound to sell and deliver grain at certain times, for prices specified, and the bankrupt was bound to accept delivery thereof at the time, and pay the price. When the time of shipment, as provided in certain contracts, arrived, it became the duty of the seller to tender delivery and the duty of the buyer to accept delivery.

The testimony shows that, prior to the time the respective deliveries were to be made under the contracts, each creditor took up with the bankrupt the matter of delivery and was requested by the bankrupt to postpone delivery, which request was acquiesced in by the creditors. The market kept falling. The financial condition of the defendant grew worse, up to early February, 1921, when Mr. Nelson, attorney for the bankrupt, came to Portland and notified the creditors that the bankrupt was not in a position to accept any more deliveries, and that bankruptcy was imminent. Thereupon the Portland Grain Company and the Maine Grain Company canceled their contracts on their books, and so notified the bankrupt. No objection was made by Gannon. The petitioners insist that there was never any actual cancellation of the contract, that it was not the intention of the parties that the contract was to be canceled; and that it makes no difference what the transaction was called; that, at the time of the alleged cancellation, the petitioners charged the bankrupt on their books with the loss occasioned by his refusal to take the grain, and so did not treat the contracts as having been made void.

I cannot sustain this contention. The testimony induces the belief in my mind that there was a valid cancellation of these contracts early in February; and that the petitioners had no further right to charge

to the bankrupt the losses occasioned by the breach of the contract. And I so find. But, whether they had such right or not, they did not proceed to make any actual tender of the goods to the bankrupt. They found that, if they insisted upon their contracts, they would probably be dealing with a bankrupt, and get only a small percentage of their claims. The petitioners in their proofs allege that, upon the bankrupt's refusal to accept the goods, it was their duty to dispose of the goods in open market, and to look to the bankrupt for the balance due on the contract, after deducting what they actually obtained for the goods in open market. Instead of doing this, they rely upon showing what they think they could have got for the goods in open market, and then entering upon their books the difference between the contract price and the market price, as the damages caused by the breach of contract. In case of a carload actually shipped to Wiscasset, upon refusal of the bankrupt to accept the grain, the goods were actually sold; and the difference between the contract price and the market price, as obtained by the sale, was properly charged; and this part of the claim of one of these creditors has been allowed by the referee.

The proofs of debt properly assume that, upon the bankrupt's refusal to accept the goods, it was the duty of the creditors to dispose of the goods in open market, and to sue for the difference between the contract price and the market price at the time of sale. This rule is followed in a leading case in Maine, Tufts v. Grewer, 83 Me. 407–411, 22 Atl. 382, 383, where, in speaking for the court, Chief Justice Peters says:

"The general rule is familiar, that for the vendee's failure to receive and pay for the goods he has contracted for, the vendor may recover the difference between the market value at the time and place stipulated for delivery and the contract price, together with the expenses of reselling the property."

The court thus assumes, in that case, that the difference between the contract price and the market price is to be obtained by an actual sale. I cannot sustain the petitioner's contention, in the case before me, that they have a right to merely enter upon the books the difference between the contract price and the market price at that date. Even though they had contracted for grain in the West, which they were prevented from selling to the bankrupt under the contract, they have not parted with any goods; and I cannot think that the court should sustain a claim which is based upon a merely putative or bookkeeping loss. In the case of the Paris Flouring Company, it is urged that there was no cancellation of the contract in February. There is testimony tending to show that there was such cancellation. But, whether the contract was canceled or not, the creditor did not actually offer its goods for delivery, and then sell the goods at the market value. But, as in the case of the other creditors, the Paris Flouring Company entered in its books the difference between the contract price and the market price at that date, without actually tendering delivery and afterwards selling the goods. Whether there was cancellation of this contract or not, what I have already said with reference to the effect of failing to tender delivery applies as well to the Paris Flouring Company as to the other creditors.

The learned counsel for petitioners have cited Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. In this case the Supreme Court enforces the rule of the English Court that, after the renunciation of a continuing agreement by one party, the other party is at liberty to consider himself absolved from any future performance of it, retaining his right to sue for any damages he has suffered from the breach of it. In the case before me, I cannot hold that the petitioners have actually suffered. They have not parted with their goods. Their losses are book account losses. They have not brought their action—or, what is the same thing, made their proofs of debt—for a square breach of the contract, but practically upon the account annexed, alleging their consideration to be for goods sold, or goods sold and delivered. This is not precisely the way the case arose in Roehm v. Horst.

With respect to all the petitioners, my conclusion is that the order of the referee, disallowing the claim in each case, is affirmed.